IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America,    )<br>            Plaintiff,    )<br>vs.    )<br>    )<br>Kristen Theresa Morris and ,    )<br>Marco Antonio Montijo    )<br>    )<br>            Defendants.    )<br>    ) | | CR 16-01686-TUC-CKJ(LAB)<br><br>**REPORT AND RECOMMENDATION** |

   The District Court referred this case to the Magistrate Judge for a hearing on the defendants' motion to suppress evidence. (Docs. 35 and 37).   An evidentiary hearing was held on 12/13/16.  During closing remarks,  Defendants Kristen Theresa Morris and Marco Antonio Montijo argued that they were placed under arrest without probable cause and in violation of the Fourth Amendment when, after stopping the vehicle, United States Border Patrol (USBP) Agent Salvador Rubalcava asked Ms. Morris to remove the car keys from the ignition and hand them to him.   The defendants argued that all evidence obtained as a result of the unlawful arrests should be suppressed.

   Since the issue was raised for the first time during the hearing, the matter was not

addressed in the Motion to Suppress (Doc. 35), the Notice of Joinder (Doc. 37), or the government's response (Doc. 38).  The Court granted the defendants leave to submit briefing on the issue, and allowed the government to file a written response.  The parties agreed during the hearing that Defendant Morris' pleading would address the issue on behalf of both defendants.  On 12/23/16 Defendant Morris filed a Supplemental Memorandum in Support of Motion to Suppress, which the Court will characterize as a motion to suppress evidence based on an unlawful arrest. (Doc. 44).  The government filed its response on 1/5/17. (Doc. 47).

In the interim, the Court submitted its Report and Recommendation to the District Court, denying the initial Motion to Suppress, based on a finding that there was reasonable suspicion for the stop of the vehicle.   (Doc. 45).

**Charge:**

The defendants are charged in a two count indictment with Conspiracy to Possess with Intent to Distribute and Possession with Intent to Distribute more than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. (Doc. 19).

**Motion to Suppress:**

The defendants argue that their Fourth Amendment rights were violated when they were arrested "de facto" when USBP Agent Rubalcava asked Ms. Morris to remove the keys from the car's ignition and hand them to him.   The parties agree that if the defendants were arrested at that moment, there was no probable cause and the arrest was unlawful.

Defendant Morris acknowledges that at the evidentiary hearing, Agent Rubalcava testified that he asked for the keys and then placed them on the roof of Ms. Morris' Tahoe. She argues, however, that the agent's report states that he reached in and took them out of the ignition and there is no mention that he placed them on the vehicle's roof.  That rendition of the facts is not in evidence but would not change the analysis.

Facts relevant to the issue at hand, elicited at the evidentiary hearing, include that when

Agent Rubalcava decided to stop Ms. Morris' vehicle, he activated his lights. He did not see brake lights or any deceleration. He used his siren briefly to get the driver's attention. She still did not slow the vehicle. Rubalcava believed she might fail to yield.

Suddenly the driver braked and made a sharp right turn onto a pullout, causing the rear tires to skid. Rubalcava was not sure if the driver was going to stop or drive past the end of the pavement into the desert. He thought the occupants might flee on foot. The Tahoe stopped at the end of the cul-de-sac. Rubalcava got out of his vehicle and quickly approached the Tahoe's driver's side door, scanning the cargo area as he passed. Defendant Morris rolled down the window. Agent Rubalcava determined that there were no people in the back of the Tahoe who might pose a threat or flee. He saw some items in the cargo area, including a blanket covering an item shaped like a bundle of marijuana.

Christopher Blanco, a USBP agent at the time, testified that he heard on the radio that Rubalcava was stopping a vehicle near his location. He saw the vehicle approach with two marked Border Patrol vehicles behind it with their lights flashing. The car barely slowed down and didn't look like it was going to stop so he positioned his vehicle to block a possible escape. The car slid into a turnout and stopped.

**DISCUSSION**:

The defendants argue that their detention exceeded the scope of a permissible investigatory detention under *Terry v. Ohio,* 392 U.S. 1 (1968), and became a de facto arrest, when Agent Rubalcava asked the driver to remove the car keys from the ignition and hand them to him. The parties agree that there are no cases directly on point but case law requires the Court to consider the totality of the circumstances to determine if surrender of the car keys constituted an arrest. The Court finds that Agent Rubalcava's actions were a reasonable response to his legitimate safety concerns. Taking the keys to prevent the defendants from fleeing did not turn the investigatory detention into an arrest.

An investigative stop, which must be justified by reasonable suspicion, ripens into an

arrest, which must be justified by probable cause, if the detention is unreasonable in manner or duration. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). There is, however, no bright line rule or mechanical checklist to determine when a *Terry* stop turns into an arrest. *U.S. v. $109,179 in U.S. Currency,* 228 F.3d 1080, 1084 (9th Cir. 2000). The Court's analysis depends on the specific facts and circumstance of the case. *U.S. v. Parr,* 843 F.2d 1228, 1231 (9th Cir. 1988) (citations omitted). When agents stop a vehicle based on reasonable suspicion, "they [are] "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *U.S. v. Hensley,* 469 U.S. 221, 235 (1985). Even handcuffing and relocating a suspect does not automatically turn a detention into a de facto arrest if the restrictions of liberty are reasonable for safety and security. *U.S. v. Bautista,* 684 F.2d 1286, 1289 (9th Cir. 1982) .

In the present case, Agent Rubalcava had reasonable suspicion to believe that the defendants were engaged in criminal conduct. He illuminated his light bar in order to stop the vehicle. When the driver did not slow down and he saw no brake lights, Agent Rubalcava used his siren to get the driver's attention. He had reason to believe that the driver was not going to stop. Another agent in the area, Charles Blanco, saw the defendants' vehicle driving toward him with two marked Border Patrol vehicles behind it, both with lights illuminated. Mr. Blanco testified that the car barely slowed and he thought it wasn't going to stop. He positioned his vehicle to block its escape.

Two experienced agents thought the vehicle was going to fail to yield. Even when Defendant Morris did stop the car, she braked suddenly and skidded into the pullout. Agent Rubalcava still wasn't confident the car would stop. He thought the driver might drive past the end of the cul-de-sac into the desert and the occupants might flee on foot. He asked Ms. Morris to take the keys out of the ignition and hand them to him so she would be unable to drive away.

What did not occur is as important as what did.  Even after the agents' concern about a possible failure to yield, only one agent initially approached the car.  He did not approach with his weapon drawn.  He did not remove the defendants from the car and handcuff them or make them lie prone on the ground.  He did not raise his voice.  He did not place the defendants in the back of his vehicle.  Removing the keys was much less intrusive than the alternatives and did not turn the detention into an arrest.

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **DENY** the motion to suppress evidence based on an unlawful arrest. (Doc.44 )

Defense counsel may serve and file written objections within 14 days.  If objections are not timely filed, the party's right to de novo review may be waived.  No reply to objections shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 13th day of January, 2017.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge